IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONALD D. KAUFMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 03-CV-306-HDC-SAJ |
| ) | |
| CHARLES RAY, Warden, ) | |
| ) | |
| Respondent. ) | |

## **OPINION AND ORDER**

Before the Court for consideration is Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus (Dkt. # 1). Petitioner also filed a brief in support of his petition (Dkt. # 2). Respondent filed a response (Dkt. # 6) and provided the state court records (Dkt. # 7) necessary for adjudication of Petitioner's claims. Petitioner did not file a reply to Respondent's response. For the reasons discussed below, the Court finds the petition shall be denied.

## *BACKGROUND*

During the evening hours of January 18, 2000, two gunmen on foot approached and attacked the occupants of a car driven by Jason Bell. The gunman on the passenger side of Bell's car held a gun to the passenger and told her not to move or he would shoot her. The gunman on the driver's side fired shots striking Bell who later died of gunshot wounds. The attack occurred in Bell's driveway located in Tulsa, Oklahoma.

As a result of those events, Petitioner Ronald D. Kaufman was initially charged, along with two (2) co-defendants Demario Grayson and James Henderson, with First Degree Murder in Tulsa County District Court, Case No. CF-2000-549. On March 17, 2000, the State dismissed the case. The State then re-filed the Information in Tulsa County District Court, Case No. CF-2000-1483, charging Petitioner and both co-defendants with First Degree Murder. However, on April 7, 2000,

before the preliminary hearing, the trial court announced that the charge against Demario Grayson had been dismissed. At the conclusion of the preliminary hearing, the trial court sustained the defendants' demurrer based on insufficient evidence to find probable cause. On April 28, 2000, the case was dismissed and the defendants were released from custody. On May 5, 2000, the State again re-filed the Information in Tulsa County District Court, Case No. CF-2000-2372, charging Petitioner with acting in concert with James Henderson to commit First Degree Murder. After the magistrate judge determined that the State had in fact discovered new evidence, the case proceeded to preliminary hearing. Petitioner and his co-defendant were bound over for trial. On June 2, 2000, an amended information was filed, charging Petitioner with acting in concert with James Henderson to commit Count I, First Degree Murder and/or in the alternative First Degree Murder in the Commission of a Felony. On January 16-18, 2001, Petitioner and his co-defendant were tried jointly by a jury. Petitioner was found not guilty of Murder in the First Degree - Malice Aforethought, but guilty of the alternative charge of Murder in the First Degree in the Commission of a Felony.[1] On March 23, 2001, the trial court sentenced Petitioner, in accordance with the jury's recommendation, to life with the possibility of parole. Petitioner was represented at trial by attorney Barry Beasley.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Katrina Conrad-Legler. He raised four (4) propositions of error as follows:

> Proposition 1: The evidence presented at preliminary hearing was insufficient to bind over Mr. Kaufman for trial, and the State failed to present new evidence after the magistrate dismissed the Appellant's case for insufficiency.

---

[1] Petitioner's co-defendant, James Brown Henderson, was found guilty of Murder in the First Degree -- Malice Aforethought and/or in the alternative Murder in the First Degree in the Commission of a Felony and sentenced to life with the possibility of parole.

2

   Proposition 2: The evidence was insufficient to support Mr. Kaufman's conviction of felony murder.

   Proposition 3: Mr. Kaufman was denied relief from prejudicial joinder for trial in accordance with Section 439 of Title 22 of the Oklahoma Statutes, thereby depriving Appellant of his constitutional right to a fair trial.

   Proposition 4: The trial court erred when it overruled Mr. Kaufman's motion for mistrial; a new trial should be granted because the jury was prejudiced when it was able to consider evidence that was not presented at trial.

(Dkt. # 6, Ex. A). In an unpublished summary opinion, filed May 10, 2002, in Case No. F-2001-373, the OCCA determined that none of Petitioner's claims was meritorious and affirmed the Judgment and Sentence of the trial court. (Dkt. # 6, Ex. C). Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court and did not seek post-conviction relief in the state courts prior to filing his original habeas corpus petition.

On May 7, 2003, Petitioner filed his federal habeas corpus petition (Dkt. # 1) and supporting brief (Dkt. # 2). In his supporting brief, Petitioner raises the same four (4) propositions of error raised on direct appeal to the OCCA. See Dkt. # 2. In response to the petition, Respondent contends Petitioner is not entitled to habeas corpus relief and that the petition should be denied.

*ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied for the claims raised in the petition filed in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The AEDPA amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated each of Petitioner's claims on direct appeal. Therefore, his claims shall be reviewed pursuant to § 2254(d).

### *1. Sufficiency of the evidence presented at preliminary hearing (claim 1)*

As his first proposition of error, Petitioner contends both that the State failed to present "new evidence" sufficient to justify the re-filing of the Information after the prior Information had been dismissed for lack of sufficient evidence to support a finding of probable cause and that the State failed to present sufficient evidence against him to be bound over for trial. Petitioner presented these claims on direct appeal where they were rejected by the OCCA, as follows: "we find the testimony of Dyra Malone constituted additional or newly discovered evidence under the standards set forth in *Chase v. State*, 517 P.2d 1142 (Okl.Cr.1973), *Jones v. State*, 481 P.2d 169 (Okl.Cr.1971), and *Nicodemus v. District Court of Oklahoma County*, 473 P.2d 312 (Okl.Cr.1970), to support the refiling of the criminal charges against Appellant." (Dkt. # 6, Ex. C at 2).

In response to the petition, Respondent argues, *inter alia*, that this claim concerns issues of state law and is not cognizable on habeas corpus review. The Court agrees with Respondent. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law

4

questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir. 1994) ("We will not second guess a state court's application or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law."). As noted below, the evidence was sufficient under applicable standards to support Petitioner's conviction, and there is nothing independent of the sufficiency of the evidence question related to the preliminary hearing about which Petitioner complains. See Snow v. Oklahoma, 489 F.2d 278, 279 (10th Cir.1973) ("there is nothing in the record to indicate that anything transpired at the preliminary hearing which denied appellant a fair and impartial trial").

Moreover, the evidence brought forth in the preliminary hearing held April 7, 2000, combined with the additional evidence presented at the preliminary hearing held on May 25, 2000, was sufficient to support probable cause as to the charge against Petitioner. At the preliminary hearing held April 7, 2000, Ronnie Cravens testified that on January 18, 2000, around 9-10 p.m., he was sitting on the porch at Calvin Harris's house smoking marijuana when the two (2) co-defendants, Henderson and Kaufman, arrived in Henderson's car. Dkt. # 7, Trans. of Prelim. Hr'g, Case No. CF-2000-1483, dated April 7, 2000, at 6-7. Cravens testified that the co-defendants got out of the car and headed east. Id. at 17. He saw Henderson with a gun, id. at 12, and Petitioner was wearing an orange stocking cap, id. at 14. Jessica Hamilton, Jason Bell's girlfriend, testified at that same preliminary hearing that on January 18, 2000, upon arriving at Jason's house in his car, her car door flew open and a gun was stuck to her by a gunman wearing an orange ski mask. Id. at 36-37. She testified she heard gunshots come from the driver's side and that she saw the two gunmen run

away, headed west. Id. at 38. She ran to help Jason who subsequently died of gunshot wounds. Id. at 39-40. At the preliminary hearing held May 25, 2000, in Tulsa County District Court, Case No. CF-2000-2372, the State presented testimony of an additional witness, Dyra Malone, the girlfriend of Calvin Harris. She testified that on January 18, 2000, she was present in the car driven by Defendant Henderson, along with Calvin Harris, Ronnie Cravens, Henderson, and another guy she had never seen before. See Dkt. # 7, Trans. of Prelim. Hr'g, Case No. CF-2000-2372, dated May 25, 2000, at 26-27. While they were all in the car, Henderson and the unidentified man discussed how they wanted Jason Bell's car. See id. at 28. Henderson and the other man got out of the car, both armed with long guns, Henderson had a bandana and the other man had a mask, and they headed east toward the victim's house. See id. at 29-30. They were going to steal Jason Bell's car. Id. at 33. That testimony was sufficient to find probable cause to bind Petitioner over for trial.

The Court also agrees with Respondent's argument that Petitioner is not entitled to habeas relief on this claim because any error in the sufficiency of the evidence presented at the preliminary hearing would not entitle Petitioner to habeas relief as the error no longer has any bearing on his incarceration. See Dkt. # 6 at 8. Petitioner has been tried by a jury and found guilty beyond a reasonable doubt based on evidence presented by the State during the trial. When one present in a court is convicted of a crime after notice and a fair trial, defects in the pretrial proceedings are not ordinarily considered sufficiently "fundamental" to justify collateral attack. Shack v. Attorney Gen. of Pa., 776 F.2d 1170, 1172 (3d Cir. 1985). Thus, for example, an illegal arrest provides no basis for a collateral attack on a judgment obtained after notice and a fair trial. United States v. Crews, 445 U.S. 463, 474 (1980); Barton v. Malley, 626 F.2d 151, 160 (10th Cir. 1980). Petitioner is not entitled to habeas relief based on his challenge to the sufficiency of the evidence presented at the

preliminary hearing.

### *2. Sufficiency of the evidence to support conviction for felony murder (claim2)*

As his second proposition of error, Petitioner contends that the State presented insufficient evidence to support his conviction for felony murder. The OCCA rejected this claim on direct appeal, citing Conover v. State, 933 P.2d 904, 910 (Okla. Crim. App. 1997) (all person concerned in the commission of a crime are principals and are equally culpable with other principals), and stating that "we find the evidence sufficient to support the conviction for felony murder." (Dkt. # 6, Ex. C at 2).

As stated above, a writ of habeas corpus will not be issued on a claim adjudicated on the merits by a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). In addition, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001). Under either standard, Petitioner's claim in this case fails.

In examining Petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In evaluating the evidence presented at trial, the Court does not

weigh conflicting evidence or consider witness credibility. <u>Wingfield v. Massie</u>, 122 F.3d 1329, 1332 (10th Cir. 1997); <u>Messer v. Roberts</u>, 74 F.3d 1009, 1013 (10th Cir. 1996).  Instead, the Court must view the evidence in the "light most favorable to the prosecution," <u>Jackson</u>, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993).   Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of <u>Jackson</u>.  <u>See</u> 28 U.S.C. § 2254(d)(1); <u>Spears v. Mullin</u>, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

Oklahoma law provides the substantive elements of felony murder applicable to the sufficiency of the evidence standard.  <u>See</u> <u>Jackson</u>, 443 U.S. at 324 n. 16.  Under the facts of this case, to sustain a conviction for felony murder under Oklahoma law, the prosecution had to prove: First, the death of a human; Second, the death occurred as a result of an act or event which happened in the defendant's attempted commission of a robbery with a dangerous weapon.  The State also had to present evidence supporting the underlying felony of attempted robbery with a dangerous weapon.  <u>See</u> Okla. Stat. tit. 21, § 701.7(B).

The Court disagrees with Petitioner's assertion that the evidence was insufficient to sustain his conviction of felony murder.  Instead, after reviewing the evidence in the light most favorable to the prosecution, the Court finds a rational jury could have reasonably found that Petitioner, while acting in concert with his co-defendant caused the death of Jason Bell.  At Petitioner's trial, the jury heard testimony that on the night of the shooting, two men, one of whom was Petitioner's co-defendant Henderson, discussed stealing Jason Bell's car.  <u>See</u> Dkt. # 7, Tr. Trans. Vol. III at 111, 151-52, 154. The two men armed with long guns, and wearing orange ski masks, headed on foot

toward's Bell's house. Id. at 155-157, 167. As a car driven by Bell pulled into the driveway of the house where Bell lived, the two gunmen wearing orange ski masks approached on either side of the car. Id. at 26, 53, 55, 69, 87. The gunman on the passenger side stuck a gun to the passenger, Amanda Hamilton. Id. at 27. Bell got out of the car and was shot three times. Id. at 29. He died of gunshot wounds. Id., Vol. IV at 87-89. Fingerprints lifted from the window of the passenger door matched the fingerprints of Petitioner to the exclusion of all others. Id. at 61-62. Based on the cited evidence when viewed in the light most favorable to the prosecution, the Court finds Petitioner has failed to demonstrate that the OCCA's adjudication of his claim challenging the sufficiency of the evidence supporting his conviction of felony murder was an unreasonable application of Jackson. 28 U.S.C. § 2254(d). The Court finds no room for reasonable debate as to whether the evidence at trial was sufficient for a rational juror to be convinced of that fact beyond a reasonable doubt. The Court concludes that Petitioner has failed to satisfy the § 2254(d) standard and his request for habeas corpus relief based on his challenges to the sufficiency of the evidence for the conviction of felony murder shall be denied.

### *3. Denial of motion for severance (claim 3)*

As his third proposition of error, Petitioner claims that he was denied a fair trial when he was jointly tried with his co-defendant after the trial court denied his motion for a severance. See Dkt. # 2. In rejecting this claim on direct appeal, the OCCA found as follows:

> we find the trial court did not abuse its discretion in denying the motion for severance. *Neill v. State*, 827 P.2d 884, 886 (Okl.Cr.1992). The defenses in this case were neither mutually antagonistic nor inconsistent. Appellant's argument that there was a conflict in the defense theories and that severance would have increased the chances for acquittal is insufficient to warrant severance. *Id.* Appellant has failed to show any prejudice by the joint trial or by the sharing of peremptory challenges pursuant to 22 O.S. 1991, § 655. Any inconsistencies in the defense theories went to culpability and co-defendants may be required to share peremptory challenges in that situation. *Neill*,

827 P.2d 891.

(Dkt. # 6, Ex. C at 2-3).

"[W]hether the trial court erred in denying severance is generally a question of state law that is not cognizable on federal habeas appeal . . . a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by the joint trial." Spears v. Mullin, 343 F.3d 1215, 1235 (10th Cir. 2003) (quoting Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998); see also Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir. 2000); Arbuckle v. Dorsey, 189 F.3d 477 (10th Cir. 1999) (unpublished). Where a petitioner does not challenge the impartiality of his jury, a challenge to the number of peremptory challenges resulting from a joint trial raises only a question of state law and does not rise to the level of a constitutional violation. Fox, 200 F.3d at 1293; Ross v. Oklahoma, 487 U.S. 81, 88 (1988) (emphasizing that "peremptory challenges are not of constitutional dimension"). Furthermore, "[t]he fact that the prosecution may have a stronger case against one defendant than against a co-defendant does not entitle the latter to a separate trial." United States v. Dill, 693 F.2d 1012, 1014 (10th Cir. 1982) (finding no abuse of discretion in trial court's denial of motion for severance).

In this case, Petitioner has failed to demonstrate that he suffered prejudice as a result of the joint trial. There was no evidence presented at trial that either co-defendant made out-of-court statements inculpating the other. Thus, there was little risk of a violation of the right of cross-examination as guaranteed by the Sixth Amendment. See Bruton v. United States, 391 U.S. 123, 126 (1968). In addition, Petitioner admits in his supporting brief, as he did on direct appeal, that he and his co-defendant did not have mutually antagonistic defenses, and argues that "the need for severance was much subtler." See Dkt. # 2. He argues that the trial should have been severed because "the

10

defenses were inconsistent and the defendants were forced to share their peremptory challenges." See id. Significantly, however, Petitioner does not claim that he was tried by an impartial jury as a result of being forced to share peremptory challenges with his co-defendant. He also contends that the State gained an advantage by trying the two co-defendants together. However, as indicated above, Petitioner was not entitled to a separate trial even if the State's case was strengthened by trying the co-defendants jointly. The Court finds that in the absence of a specific showing of prejudice resulting from the joint trial, Petitioner is not entitled to habeas corpus relief on his claim challenging the denial of his motion for a severance.

### *4. Consideration of extrinsic evidence (claim 4)*

As his fourth proposition of error, Petitioner complains that his jury was prejudiced when it inadvertently viewed evidence, an envelope containing grass, a few hairs and some reddish-colored fiber, that had not been admitted at trial. See Dkt. # 2. Petitioner further claims that the trial court erred in denying his motion for a mistrial based on the jury's exposure to extrinsic evidence. See id. The OCCA rejected this claim on direct appeal, citing Edwards v. State, 637 P.2d 886 (Okla. Crim. App. 1981), and finding that "there is no reasonable possibility that prejudice could have resulted from the jury's examination of the unadmitted evidence." (Dkt. # 6, Ex. C at 3).

In Vigil v. Zavaras, 298 F.3d 935 (10th Cir. 2002), the Tenth Circuit Court of Appeals addressed the relevant considerations in the habeas context as follows:

> The Supreme Court has held repeatedly that a jury's verdict "must be based upon the evidence developed at the trial." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). In Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Court explained that under the Sixth and Fourteenth Amendments, "trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Id. at 472-73, 85 S.Ct. 546.

11

> However, in the habeas corpus context, a federal court may grant relief only where the alleged misconduct "had substantial and injurious effect or influence in determining the jury's verdict," Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Crease v. McKune, 189 F.3d 1188, 1192 (10th Cir. 1999) (applying Brecht in a habeas case involving an ex parte conversation between a judge and a juror).
>
> *****
>
> In deciding whether outside information substantially influenced a jury's verdict (thereby prejudicing the defendant), courts cannot delve directly into jurors' mental processes. Mayhue, 969 F.2d at 923; United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir. 1988) (collecting cases); F.R.Cr.P. 606(b). A court may consider, however, a number of other factors, such as: (1) the degree to which the jury discussed and considered the extrinsic information, United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir. 1991); (2) the extent to which the jury had difficulty reaching a verdict prior to receiving the improper evidence, Mayhue, 969 F.2d at 926; (3) the degree to which the information related to a material fact in the case, Rodriguez, 125 F.3d at 744; (4) when the jury received the extrinsic evidence, Mancuso, 292 F.3d at 951-52; (5) the strength of the legitimate evidence, United States v. Chanthadara, 230 F.3d 1237, 1265 (10th Cir. 2000); and (6) whether the extrinsic evidence merely duplicates evidence properly before the jury. See Rodriguez, 125 F.3d at 744 ("[T]he introduction of duplicative or cumulative extraneous material may render juror misconduct harmless."); Hughes v. Borg, 898 F.2d 695, 700 (9th Cir. 1990) (collecting cases from the Ninth, Eleventh, and D.C. Circuits).

Id. at 940.

In the instant case, the Court finds Plaintiff has failed to demonstrate that the jury's brief, inadvertent exposure to the extrinsic material "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The material consisted of a sealed envelope containing grass, leaves, reddish fibers, and hair that had been submitted for DNA testing but the results of the testing were inconclusive. See Dkt. # 7, Tr. Trans. Vol. IV, dated January 18, 2001, at 202. The envelope was in the bottom of a sack of evidence containing the ski mask which had been admitted. See id. at 209. The jury was specifically instructed to disregard the evidence in the envelope. Id. at 214. After the jury concluded deliberations and returned its verdicts, the trial court asked about circumstances related to the

envelope. Juror Warren reported that he found the envelope, unsealed and opened it, and told the other jurors what was in it. Id. at 231. According to Juror Warren, the other jurors did not really see the contents of the envelope and expressed no interest in the material. Id. The trial court judge also polled the jury, asking whether the envelope in any way entered into the verdict as to either defendant. Id. at 232. Each juror answered "no." Id. at 232-35. As noted by the trial court judge, see id. at 207, the state did not present any DNA evidence. It was defense counsel who elicited testimony from one witness that DNA testing had been conducted. Id. at 116-17. Evidence against Petitioner included eyewitness testimony and the presence of Petitioner's fingerprints on the passenger side window of the victim's car. The record makes clear that only one juror briefly viewed the contents of the envelope, that the jury did not discuss the possible significance of the contents of the envelope, and that the grass, fibers and hairs did not relate directly to a material fact. The Court finds that based upon review of the cited record, Petitioner has failed to demonstrate that the inadvertent submission of the extrinsic evidence had any effect, let alone a substantial and injurious effect, on the jury's verdict. The OCCA's adjudication of this claim was not contrary to or an unreasonable application of federal law. Petitioner is not entitled to habeas corpus relief on this claim.

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

2. A separate Judgment shall be entered in this case.

SO ORDERED THIS 16th day of August, 2006.

HONORABLE H. DALE COOK
Senior United States District Judge